W. Caton MERCHANT, Jr., Plaintiff,

v.

OPPENHEIMER & CO., INC., Defendant.

Civ. A. No. 83–0134–R.

United States District Court, E.D. Virginia, Richmond Division.

Aug. 3, 1983.

James E. Farnham, K. Dennis Sisk, Richard W. Goldman, Hunton & Williams, Richmond, Va., for plaintiff.

Harvey B. Cohen, Joanne F. Alper, Cohen, Gettings, Alper & Dunham, Arlington, Va., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiff, a Virginia citizen, brings this action for breach of statutory contract and for recovery of a statutorily provided refund against Oppenheimer & Co., Inc., a Delaware corporation whose principal place of business is in New York. As the amount in controversy exceeds $10,000, the Court has jurisdiction pursuant to 28 U.S.C. § 1332(a). The matter comes before the Court on cross-motions for summary judgment.[1] There are no genuine issues of material fact, and the matter is ripe for disposition.

### I. Undisputed Facts

Defendant is a broker-dealer within the meaning of the Virginia Securities Act, Va. Code § 13.1–501(c). During 1981, defendant employed Edward Finder as its "agent" as defined in Va.Code § 13.1–501(b). Finder, however, was not registered as an agent, as required by Va.Code § 13.1–504(a). Finder was among the Oppenheimer agents, who, during the time period pertinent hereto, handled plaintiff's brokerage account. Thus, in 1982 defendant concluded it might be liable to plaintiff pursuant to Va.Code § 13.1–522(a).[2]

In accordance with Va.Code § 13.1–522(d),[3] defendant sent a letter dated October 7, 1982 to plaintiff, which stated in part:[4]

Accordingly, with respect to the above account, this letter is an offer, pursuant to Code of Virginia § 13.1–522(d). For all securities sold to you by an Oppenheimer broker who was not registered in

---

1. Defendant styled its motion a motion to dismiss. In support, however, defendant referred to matters outside the pleading. Accordingly, pursuant to Fed.R.Civ.P. 12(b), the Court considers defendant's motion a motion for summary judgment under Fed.R.Civ.P. 56.

2. That section provides that any person who sells a security in violation of, inter alia, the registration requirement,

Shall be liable to the person purchasing such security from him who may sue either at law or in equity to recover the consideration paid for such security, together with interest thereon at the rate of six percent per annum, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of such security, or for the substantial equivalent in damages if he no longer owns the security.

Pursuant to Va.Code § 13.1–522(b), one who "materially participates or aids in a sale" by such a seller or who "directly or indirectly controls" such a seller is jointly and severally liable with the seller.

3.

(d) No suit shall be maintained to enforce any liability created under this section unless brought within two years after the transaction upon which it is based; provided, that if any person liable by reason of subsection (a) or (b) makes a written offer, before suit is brought, to refund the consideration paid, together with interest thereon at the rate of six percent per annum, less the amount of any income received on the security, or to pay damages if the purchaser no longer owns the security, no purchaser shall maintain a suit under this section who shall have refused or failed to accept such offer within thirty days of its receipt.

4. Because the parties dispute the legal effect of the correspondence that flowed between them, the Court must set forth in somewhat tedious detail the pertinent language of that correspondence.

the Commonwealth of Virginia at the time of such sale, Oppenheimer hereby offers to refund the consideration paid, together with interest thereon at the rate of six percent (6%) per annum, less the amount of any income received on the security, or to pay damages if you, the purchaser, no longer own the security.

Counsel for plaintiff responded with a letter dated November 2, 1982, which stated in part:

On behalf of W. Caton Merchant, Jr. we accept the offer set forth in your October 7, 1982 letter. In order to liquidate the sums in question, I will need to obtain some additional information from you and you will have to obtain some additional information from me. We can discuss the exchange of this information in the near future.

Plaintiff's counsel followed with a letter of December 3, 1982 setting forth plaintiff's claim for $91,708.01 as the liquidated amount due. Defendant's counsel sent a letter December 10, 1982 further discussing the "final terms of our settlement pursuant to our offer dated October 7, 1982." By letter of December 16, 1982, plaintiff's counsel adjusted the claimed amount due to $85,324.63, to account for a then recent transaction.

Defendant's counsel responded with a letter dated December 22, 1982 disputing plaintiff's method of calculating the amount due. This communication was followed by a letter of January 5, 1983 setting forth what defendant contended to be "the amount of money which is the subject of the offer of Oppenheimer & Co., Inc. ('Opco') to Mr. Merchant Jr. pursuant to *Code of Virginia* Section 13.1–522(d)." Defendant offered plaintiff $39,942.23 and indicated it expected an acceptance or rejection of the offer by January 7, 1983.

The parties apparently discussed the matter further by telephone, and defendant's counsel sent plaintiff's counsel a letter of January 21, 1983 which began:

For continuity, I refer you to my letter dated October 7, 1982, wherein Oppenheimer & Co., Inc. ("Opco") extended to your client, Mr. Merchant Jr., an offer pursuant to *Code of Virginia* Section 13.-1–522(d) and my letter dated January 5, 1983, to you providing you, under the same statute, the sum which Opco has determined to be damages payable to Mr. Merchant Jr. in accordance with the statutory provisions. The January 5, 1983, letter also provided an explanation of the manner in which Opco calculated the amount of damages.

Finally, on February 28, 1983, defendant's counsel sent plaintiff's counsel a telegram which stated:

MORE THAN THIRTY DAYS HAVE PASSED SINCE OPPENHEIMER AND CO INC. (OPPENHEIMER) EXTENDED ITS OFFER, PURSUANT TO CODE OF VIRGINIA SECTION 13.1–522(D) TO PAY $39942.23 IN DAMAGES. INASMUCH AS YOU HAVE FAILED TO ACCEPT SUCH OFFER, OPPENHEIMER PURSUANT TO CODE OF VIRGINIA SECTION 13.1–522(D) HEREBY TERMINATES SUCH OFFER EFFECTIVE IMMEDIATELY.

Plaintiff's counsel responded with a letter of March 1, 1982, stating:

I have your telex of February 28, 1983. Oppenheimer made a statutory offer on October 7, 1982. That offer was accepted. We have disagreed as to the amount of money which Oppenheimer is obligated to pay under the statute. I expect to file suit shortly to resolve that dispute.

True to his word, plaintiff's counsel filed this action three days later.

## II. *Offer and Acceptance*

■ As a logically preliminary matter, the Court must consider the effect of the correspondence between the parties to determine whether defendant made an offer and plaintiff accepted the offer, within the meaning of Va.Code § 13.1–522(d). The parties have suggested at least four possible interpretations of the correspondence:

(1) Plaintiff contends that defendant's October 7 letter was an effective offer, and plaintiff's November 2 letter was an effective acceptance. The remaining correspon-

dence simply amounted to negotiations as to terms.

(2) Defendant contends that the October 7 letter was an effective offer, but the November 2 letter was not an effective acceptance because plaintiff did not accept the offer of a refund as to "all securities" that Finder had sold to plaintiff. Rather, plaintiff sought to accept only as to those securities on which he had suffered a loss. Thus, plaintiff did not effectively accept the offer within thirty days, as Va.Code § 13.1–522(d) requires, and this action is barred.

(3) Defendant contends in the alternative that plaintiff's December 3 and 16 letters repudiated the contract formed by the October 7 offer and the November 2 acceptance. Thereafter, defendant's January 5 letter amounted to a new offer, which plaintiff failed to accept within thirty days, so this action is barred under § 13.1–522(d).

(4) Plaintiff contends in the alternative that the January 5 letter was not an effective offer under the statute because it did not comply with the statutory requirements. For one thing, it indicated an acceptance was required within two days, rather than leaving the offer open thirty days, as required. Thus, plaintiff asserts that if, as defendant contends, the January 5 letter was intended as an offer, it interpreted, modified, revoked, or repudiated the October 7 offer, so there remained no effective offer. Plaintiff would then be entitled to bring this action pursuant to Va.Code § 13.1–522(a), which applies where no offer under § 13.1–522(d) has been made.[5]

At the outset of its analysis, the Court notes that there is no apparent reason to suppose that in employing the terms "offer" and "accept," the Virginia General As-

sembly intended to incorporate into the statute several centuries of technical common law rules of contract formation. Indeed, the Court is far from certain just what a "statutory contract" is supposed to entail and how similar to a garden-variety contract it is supposed to be. The provisions of Va.Code § 13.1–522(d) are apparently designed to allow parties to avoid litigation and quickly settle their differences. The needs of such parties are different from the needs of parties negotiating a commercial transaction. In light of such considerations, the General Assembly more likely intended a common-sense inquiry into the parties' intent to determine whether a statutory contract has been formed.

The Court is satisfied that however formally or informally the General Assembly intended to use "offer" and "accept," the October 7 and November 2 letters came within the intended meaning.[6] The correspondence clearly indicates both parties considered the letters to constitute an offer and acceptance under the statute. In particular, as the language quoted *supra* indicates, defendant's December 10 letter referred to "our settlement pursuant to our offer dated October 7, 1982"; its January 5 letter referred to "the offer of Oppenheimer & Co., Inc.";[7] and even its January 21 letter referred to the October 7 letter as having extended to plaintiff an offer for which the January 5 letter was intended to set the amount. It is obvious that at least through January 21, both parties acted as if they had essentially reached an agreement. The injection of the theory that the January 5 letter was a new offer appears to have been an afterthought on counsel's part, and the Court rejects that conclusion as not well taken.

**5.** Count II of the complaint rests on this theory, which is alleged in the alternative to the theory in Count I that a valid statutory contract was formed by the October 7 offer and November 2 acceptance.

**6.** Even under formal rules of contract formation, the parties may sometimes leave open terms, including price, yet form an effective contract. Va.Code § 8.2–305. *See generally* J.

White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code* § 3–7 (2d ed. 1980).

**7.** Had the defendant intended the January 5 letter to constitute a new offer, the letter probably would have referred to "this offer"; the language employed indicates the letter is referring to a pre-existing offer.

The Court concludes that the parties intended to form an agreement through the October 7 and November 2 letters, and they effectively did so for purposes of Va.Code § 13.1–522(d). The Court further concludes that the plaintiff's December 3 and 16 letters did not repudiate the agreement, but only attempted to settle on the proper interpretation of its terms.

### III. *Scope of the Offer*

■ While the October 7 offer began with a reference to "all securities," it ended with a verbatim reproduction of the language of Va.Code § 13.1–522(d), which is framed in terms of "the security." The language of the subsection reflects the fact that, under Va.Code § 13.522(a), liability may be based on the sale of a single security in violation of the statute; § 13.1–522(d) then allows the seller to make an offer concerning "the security." The statute does not specify the proper treatment of a series of transactions involving numerous securities.

Defendant contends that where several sales of securities are involved, the seller must offer and the buyer must accept rescission as to every such security to comport with § 13.1–522(d). Thus, defendant contends that its offer as to "all securities" refers to the securities as a group. Plaintiff in effect interprets "all securities" to mean "each and every security"[8] and asserts that under § 13.1–522(d), he is allowed to accept or not accept the offer as to each security individually.

The Court is not aware of any previous cases dealing with the proper scope of an offer and acceptance under § 13.1–522(d) where multiple sales are involved.[9] In deciding this question, the Court finds most

significant the fact previously noted that each such sale amounts to a separate violation. There is no reason in logic or in law why either the buyer or the seller should be required to deal with each such violation in the same manner or be required to aggregate them.

When the defendant offered to refund the consideration "for all securities" sold by an unregistered broker, defendant was in effect using one offer to cover a number of violations. In this manner defendant was attempting, and properly so, to cover the entire extent of its potential liability. The plaintiff thus was presented with a "fish or cut bait" situation with respect to each such violation. For some of the violations, he accepted the offer. For the remaining violations, he failed to accept within the thirty days provided by the statute and so is forever foreclosed from asserting a claim as to those violations. Thus, the defendant has, as it intended to do, achieved peace of mind as to all violations. Such is the purpose of § 13.1–522(d). *See generally Street v. Consumers Mining Corp.*, 185 Va. 561, 575, 39 S.E.2d 271, 277 (1946) (purpose of statute of limitations).

The Court does not agree that this set of circumstances provides a windfall to plaintiff, as defendant asserts, in that plaintiff is allowed to retain the benefit of the profitable transactions. If plaintiff were able to maintain his options past the thirty-day limit, accepting rescission of each transaction only when and if the transaction ultimately turned sour for him, the Court might be able to find that a windfall is provided. As the situation stands, however, the defendant has gotten the full intended benefit of § 13.1–522(d): defendant has forced the

---

8. The Court must confess to having been amused and impressed at hearing of the audacity of an attorney who had based an argument on the proper interpretation of "the ambiguous modifier 'all' " in a case before the Hon. Thomas R. Brett of the United States District Court for the Northern District of Oklahoma. The Court now better understands the ambiguity and sees a valid argument to be made, based on that ambiguity.

9. The case defendant has cited to, *Todaro v. E.F. Hutton & Co.*, No. 81–731–N (E.D.Va. Aug. 17, 1982), did not present the issue of the proper scope of a § 13.1–522(d) offer and acceptance where a series of sales is involved. The plaintiff has cited to decisions from other states concerning similar statutes, *see, e.g., Piantes v. Hayden-Stone, Inc.*, 30 Utah 2d 110, 514 P.2d 529 (1973), *cert. denied*, 415 U.S. 995, 94 S.Ct. 1599, 39 L.Ed.2d 893 (1974), but those decisions also did not involve the proper scope of such an offer and acceptance.

plaintiff's hand, requiring him to act within thirty days concerning each transaction, rather than allowing him to sit back and watch how his investments fared over the entire two-year limitation period that otherwise would apply, then to bring claims as to all those that proved unprofitable.

Even if there were a windfall for the plaintiff, however, the Court would not necessarily conclude that the interpretation producing the windfall was contrary to the intent of the General Assembly. The statute was intended to benefit buyers of securities, not sellers. *See Pollok v. Commonwealth*, 217 Va. 411, 413–14, 229 S.E.2d 858, 859–60 (1976). The provisions of Va.Code § 13.1–522 apply to several types of violations of the statute, including fraud. It is difficult to characterize the remedy due a fraud victim as a "windfall," even if it exceeds total out-of-pocket loss. The Court concludes that the General Assembly intended for a buyer of securities to recover damages for any sale of securities in violation of the statute, regardless of whether the buyer happened to profit from other sales of securities in violation of the statute.

The Court is satisfied that the parties entered into a statutory contract whereby the seller would provide the relief appropriate under Va.Code § 13.1–522(d). The seller has not provided such relief and so is in breach of the statutory contract. The Court will grant plaintiff's motion for summary judgment and deny defendant's motion.

### IV. *Interest Calculation*

■ Defendant also disputes plaintiff's method of calculating the interest due under the statutory provision. *See* note 3 *supra.* Plaintiff seeks to compute interest from the date of purchase for each security; defendant seeks to compute interest from the date of the last transaction involving each security. Plaintiff's position reflects the method of calculation commonly applied

in securities cases, and it properly attempts to compensate for the loss of use of funds. *See Todaro v. E.F. Hutton & Co.,* No. 81–731–N, slip op. at Table I (E.D.Va. Aug. 17, 1982); *Johns Hopkins University v. Hutton,* 297 F.Supp. 1165, 1233 (D.Md.1968), *rev'd in part on other grounds,* 422 F.2d 1124 (4th Cir.1970). That the *Todaro* court adopted defendant's proposed procedure as to certain securities under circumstances not presented in the instant case does not alter the Court's conclusion that plaintiff's proposed method of calculating interest is the proper one here.[10]

An appropriate order will issue.

### ORDER

In accordance with the memorandum of the Court this day filed, and deeming it just and proper so to do, it is ADJUDGED and ORDERED as follows:

1. Defendant's motion to dismiss be, and the same is hereby treated as a motion for summary judgment, and the motion is hereby denied.

2. Plaintiff's motion for summary judgment be, and the same is hereby granted.

3. Judgment be, and the same is hereby entered in favor of plaintiff in the amount of $90,777.64, together with interest at the rate of six percent per annum from the date of March 4, 1983 until this date and at the legal rate for post-judgment interest after this date.

---

**10.** The Court's decision in this action is based on Count I, the allegation of breach of statutory contract. The Court thus does not reach Count II, alleging, in the alternative, a cause of action based on Va.Code § 13.1–522(a). Since Count I is not a direct action based on that subsec-

tion, it does not bring into play the provision for counsel fees made in that subsection. The plaintiff's prayer for counsel fees in Count I will be treated the same as such a request in any other breach of contract action.