Horace D. McCOWAN, Jr. and Sarah E. McCowan, Plaintiffs,

v.

SEARS, ROEBUCK AND CO., and Dean Witter Reynolds, Inc., Defendants.

No. 87 Civ. 2336 (RLC).

United States District Court, S.D. New York.

Oct. 12, 1989.

Thompson & McMullan, Richmond, Va. (Charles W. Laughlin, of counsel), Harry H. Wise, III, New York City, for plaintiffs.

Morgan, Lewis & Bockius, New York City (John F.X. Peloso and Jane M. Knight, of counsel), for defendants.

ROBERT L. CARTER, District Judge.

Defendants Dean Witter Reynolds, Inc. ("Dean Witter") and Sears, Roebuck & Co. ("Sears") bring a motion to dismiss or, in the alternative, to stay all claims asserted against them by plaintiffs Horace D. McCowan, Jr. and Sarah E. McCowan (together, the "plaintiffs"). The plaintiffs charge the defendants with violation of the Virginia Securities Act. This court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 (1976).

I.

This is the court's third disposition in this litigation and familiarity with prior opinions is assumed. We briefly review the history of this litigation to help further the understanding of the instant determination.

On October 31, 1986, the plaintiffs brought suit in the Southern District of New York against Dean Witter alleging violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 ("RICO"), the Securities Act of 1933 (the "1933 Act"), and the Securities Exchange Act of 1934 (the "1934 Act") ("*McCowan I*"). On December 31, 1986, the plaintiffs filed a diversity suit in the Eastern District of Virginia against both Dean Witter and Sears alleging "controlling person" liability against Sears pursuant to the Virginia Securities Act, Va.Code Ann. § 13.1–501 *et seq.* ("*McCowan II*"). Because both cases arise out of the same facts and involve the same subject matter, Judge James R. Spencer of the Eastern District of Virginia ordered in April, 1987 that *McCowan II* be transferred to this district. In May, 1987, the actions were consolidated.

In an opinion dated December 21, 1987, *McCowan v. Dean Witter Reynolds, Inc.*, 682 F.Supp. 741 (S.D.N.Y.1987) (Carter, J.), the court referred the RICO claims and the claims arising under the 1934 Act to arbitration. The court found that the claims arising under the 1933 Act were deficiently pleaded and dismissed such claims with leave to replead. The decision on the defendants' motion to dismiss the Virginia state law claim was deferred until the plaintiffs had repleaded their 1933 Act claims. An amended complaint was filed on January 19, 1988, under the *McCowan I* caption only. In a slip opinion, Fed.Sec.L. Rep. (CCH) ¶ 94,423, 1989 WL 38354 (S.D. N.Y. April 11, 1989), the court held that there was no private right of action under § 17(a) of the 1933 Act and that § 12(2) of the 1933 Act is inapplicable to post-distribution transactions, and accordingly dismissed those counts of the plaintiffs' amended complaint. The only claim left for disposition is the Virginia state law claim contained in *McCowan II*.

II.

Defendant Dean Witter is indirectly owned by defendant Sears.[1] Although Sears owns no Dean Witter stock directly, it is the sole owner of Dean Witter Finan-

---

1. All facts are those set forth in the plaintiffs' complaint and affidavit. These facts have not yet been proven or stipulated to between the parties, but for the purposes of this motion the court presumes all of the plaintiffs' allegations to be true. *Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 61 (2d Cir.1985).

cial Services Inc., which is the sole owner of Dean Witter.

Early in 1985, the plaintiffs established an account with Dean Witter including a non-discretionary securities account. In numerous transactions during the months of January through October, 1985, Dean Witter, as broker for the plaintiffs, sold them numerous shares of several securities, including an aggregate of 219,000 shares of Hawkeye Bancorporation ("Hawkeye") and 120,000 shares of First Interstate of Iowa.

To make the sales, Dean Witter sold other shares in the plaintiffs' securities account, used the plaintiffs' cash funds, and incurred margin debt for the plaintiffs. Although the securities account was a non-discretionary account, Dean Witter made each sale without prior approval from the plaintiffs and without disclosing to the plaintiffs material information known to Dean Witter concerning the sale, the shares, the issuers and Dean Witter's opinions regarding such stock. Dean Witter conducted each transaction with the plaintiffs for Dean Witter's own account as a principal and dealer without the plaintiffs' prior consent, merely sending an unauthorized confirmation for each transaction to the plaintiffs.

Dean Witter mailed the plaintiffs monthly statements from January to October, 1985. Such statements contained, among other things, the "market value," current "portfolio value," and "net equity" value for each of the securities in the securities account. Dean Witter represented that the "market value" and "portfolio value" were determined by a quotation service appraisal. Dean Witter represented that the plaintiffs' securities account had a net equity value of over $1.5 million as of June 30, 1985, but reported that it had dropped to a little over $1 million as of October 31, 1985.

After a drop in the value of the securities account, plaintiffs directed Dean Witter to liquidate the securities account in November, 1985. Dean Witter did not complete liquidation until January, 1986, and failed to disclose to the plaintiffs that it did not intend to execute their order to liquidate

immediately. During the time of liquidation, Dean Witter acted as a market maker for Hawkeye shares, purchasing, selling, offering, bidding for and owning a significant number of Hawkeye shares. Moreover, during this period, Dean Witter traded in Hawkeye shares as a principal for its own account. After liquidation was completed, and all margin debt and costs were paid, the net return to the plaintiffs was $294.

At the time of each transaction for the plaintiffs' securities account, Dean Witter was familiar with and had peculiarly within its knowledge or available to it extensive, current, and material information concerning each transaction. Dean Witter misled the plaintiffs by recklessly, negligently, or willfully concealing, or failing fully and fairly to disclose to the plaintiffs information then known to Dean Witter and material to an informed investment decision to purchase such shares.

The defendants move for dismissal of the complaint pursuant to Rule 12(b)(6), F.R. Civ.P., on the ground that the complaint fails to state a claim for relief against Sears under the Virginia Securities Act. The defendants also move for dismissal on the ground that the complaint fails to allege fraud with the particularity required pursuant to Rule 9(b), F.R.Civ.P. Regarding Dean Witter, the defendants move for dismissal on the grounds that the complaint seeks no relief against Dean Witter as required by Rule 8(a)(3), F.R.Civ.P. Finally, the defendants request that if this action is not dismissed, the court stay proceedings pending the outcome of the previously ordered arbitration between the plaintiffs and Dean Witter.

### III.

The plaintiffs' complaint is predicated on alleged violations of the Virginia Securities Act, Section 13.1–501 *et seq.* of the Virginia Code Annotated (1977) (hereafter, "§ —" or, collectively, the "Virginia Act"). Section 13.1–522(a) provides in relevant part:

Any person who ...[s]ells a security by means of an untrue statement of a material fact or any omission to state a mate-

rial fact necessary in order to make the statement made, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable ...

Section 13.1–522(b) describes the liability of a controlling person as follows:

Every person who ... directly or indirectly controls any person [liable under § 13.1–522(a),] shall also be liable jointly and severally with and to the same extent as the person so liable, unless the person who so ... controls sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known of the existence of the facts by reason of which the liability is alleged to exist.[2]

The plaintiffs claim that Sears is such a controlling person with respect to Dean Witter.

### A.

As a threshold matter, it is clear that § 13.1–522(a)(2) expressly creates a private right of action for fraudulent sales for a purchaser of securities. Section 13.1–522(a)(2) states in relevant part, "[a]ny person who [sells a security and is guilty of a violation or sells a security by means of fraud] *shall be liable to the person purchasing such security* from him who may sue either at law or in equity to recover the consideration paid for such security ..." (emphasis added).[3] *See also Merchant v.*

*Oppenheimer & Co., Inc.,* 568 F.Supp. 639, 642 (E.D.Va.1983), *aff'd in part, rev'd in part* 739 F.2d 165 (4th Cir.1984).

Furthermore, § 13.1–522(a)(2) expressly protects every purchaser defrauded in a sale of securities. Unlike § 12(2) of the 1933 Act, § 13.1–522(a)(2) applies to post-distribution trading as well as to initial distributions. It is not necessary under § 13.1–522(a)(2) for the sale to involve a prospectus or be part of an initial distribution. In this sense, the Virginia Act covers areas from both the 1933 Act and the 1934 Act. *Gurley v. Documation, Inc.,* 674 F.2d 253, 259 (4th Cir.1984) ("Virginia's blue sky law shares with § 10b of the 1934 Act the central purpose of protecting investors from fraud in the securities markets."); Loss, Securities Regulation (1989) at 51 (The section of the Uniform Securities Act on which § 13.1–522(a) was modeled is "based on Rule 10b–5 [and] outlaws fraudulent practices in connection with the sale or purchase of a security."); Loss, Commentary on the Uniform Securities Act (1976) at 6 ("the Virginia Act is substantially Rule 10b–5"). It has been held specifically that there is a private right of action under the Virginia Act for trading done by brokers. *Merchant v. Oppenheimer & Co., Inc., supra,* 568 F.Supp. at 642.

### B.

■ The defendants argue that although Sears is effectively the sole shareholder of Dean Witter, it is not a "controlling person" within the meaning of the Virginia Act.[4] There are no Virginia cases inter-

---

**2.** This section was amended in 1987 and renumbered as § 13.1–522C. It now states in full:
Every person who directly or indirectly controls a person liable under subsection A or B of this section, including every partner, officer, or director of such a person, every person occupying a similar status or performing similar functions, every employee of such a person who materially aids in the conduct giving rise to the liability, and every broker-dealer, investment advisor, investment advisor representative or agent who materially aids in such conduct shall be liable jointly and severally with and to the same extent as such person, unless able to sustain the burden of proof that he did not know, and in the exercise of rea-

sonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist. There shall be contribution as in cases of contract among the several persons so liable.
Va.Code Ann. § 13.1–522C (1989).

**3.** Although § 17(a) of the 1933 Act, 15 U.S.C. § 77q(a), is virtually identical to the portion of § 13.1–522(a)(2) which describes the prohibited fraudulent conduct, § 17(a) contains no express private right of action.

**4.** In an effort to support their position, the defendants argue that the 1987 amendment to § 13.1–522(b) (currently numbered

preting "controlling person,"[5] but other cases and regulations define "control" to mean the power to control. 17 C.F.R. § 240.12b-2 (1986) (S.E.C. regulation defining control as "...the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract or otherwise."); *Safeway Portland Employees' Federal Credit Union v. C.H. Wagner & Co.*, 501 F.2d 1120, 1124 n. 17 (9th Cir.1974) (citing the SEC definition). It is obvious that Sears had the power to control Dean Witter. As the sole shareholder of Dean Witter, Sears could, for example, remove and replace Dean Witter's officers or directors, amend its charter, sell its assets, or merge it into another company. As the sole shareholder of Dean Witter, Sears is a "controlling person" for the purposes of § 13.1-522(b).

### C.

■ The defendants argue that the plaintiffs' allegations that Sears was a

"controlling person" are insufficient because they do not allege that Sears was a culpable participant in the alleged fraud. The plaintiffs argue that it is only necessary to plead that Sears had control, all else being an affirmative defense. Based on an analogy to Section 20(a) of the 1934 Act ("Section 20(a)"), the defendants maintain that they are not required to come forward with their good faith defense that they did not know and could not have known of the fraud until the plaintiffs allege culpable participation.[6]

A decision regarding necessary allegations cannot be based on an analysis of Section 20(a), however, because § 13.1-522(b) differs from § 20(a).[7] Section 20(a) provides liability for "[e]very person who, directly or indirectly, controls any person liable ..." Section § 13.1-522(b), on the other hand, provides liability for "[e]very person who materially participates or aids in a sale made by any person liable ...or who directly or indirectly controls any person so liable ..." A facial compari-

---

§ 13.1-522C) shows that the Virginia legislature never intended for sole shareholders to be included in the definition of "controlling person." The defendants' argument misinterprets the 1987 amendment. This amendment does not change the law with regard to controlling persons themselves, but instead makes liable partners, officers, and directors of controlling persons and employees, broker-dealers, investment advisors, investment advisor representatives and agents of controlling persons if such persons materially aided in the conduct of the controlling person.

**5.** The defendants cite *Kennedy v. Nicastro*, 503 F.Supp. 1116, 1121 (N.D.Ill.1980) and *Hokama v. E.F. Hutton & Co.*, 566 F.Supp. 636, 646–47 (C.D.Cal.1983) in support of their position that absolute stock ownership does not establish control. These cases are not persuasive, however, because they were dismissed for inadequate pleading. The defendants also cite *Wool v. Tandem Computers Inc.*, 818 F.2d 1433, 1441 (9th Cir.1987). As *Tandem Computers* correctly observed, ordinarily holding the position of officer of a company is insufficient to presume control. This case is not on point, however, since there are clear and obvious differences between the power of an officer of a company as in *Tandem Computers* and the power of a company's sole shareholder as in this case.

**6.** Although it has not been held that these two statutes are identical, they were treated as iden-

tical in *Walker v. Cardinal Savings and Loan Association*, 690 F.Supp. 494 (E.D.Va.1988).

**7.** Even if the Virginia Act was analogous to § 20(a) it is not clear that it is necessary to allege that Sears is a culpable participant. Although this allegation would be required in other circuits, *see, e.g., Wool v. Tandem Computers Inc., supra*, 818 F.2d at 1440, authority in this circuit regarding pleading requirements for § 20(a) is mixed. It is clear that in enacting § 20(a) Congress intended to impose liability only on those "who fall within its definition of control and who are in some meaningful sense culpable participants in the fraud perpetrated by controlled persons." *Lanza v. Drexel & Co.*, 479 F.2d 1277, 1299 (2d Cir.1973). What is less clear is whether a plaintiff must allege and prove culpable participation or whether culpable participation is assumed unless the defendant comes forward with a good faith defense. Although it has been said that "[i]n this Circuit "good faith" is recognized as a defense under [§ 20(a)]," *Terra Resources I. v. Burgin*, 664 F.Supp. 82, 88 (S.D.N.Y.1987) (Sweet, J.), citing *Marbury Management, Inc. v. Kohn*, 629 F.2d 705, 716 (2d Cir.1975), *cert. denied*, 449 U.S. 1011, 101 S.Ct. 566, 66 L.Ed.2d 469 (1980), it has also been held that it is necessary to allege culpable participation. *O'Connor & Assoc. v. Dean Witter Reynolds, Inc.*, 529 F.Supp. 1179, 1194–95 (S.D.N.Y.1981) (Lasker, J.); *Gordon v. Burr*, 506 F.2d 1080, 1086 (2d Cir.1974).

son of these two statutes thus shows that while § 20(a) only imposes liability on controlling persons, § 13.1–522(b) imposes liability on both controlling persons and on persons who materially participate or aid.[8]

The history of the Virginia Act sheds further light on the two kinds of liability found in § 13.1–522(b). Virginia's blue sky law has imposed liability on those who "participated or aided" in securities fraud since 1928.[9] It was not until 1956 that Virginia law made controlling persons also liable.[10] It is reasonable to conclude from this legislative history that participation is not always required for controlling person liability because such requirement would make the 1956 controlling person liability amendment meaningless since participants were already liable. From this it follows that control and participation can each serve as an independent basis from which liability can be imposed. Because participation is not required to prove liability based on control under § 13.1–522(b), it is obviously not required to be pleaded.

### D.

The defendants claim that the plaintiffs' allegations of fraud have not been pleaded in accordance with Rule 9(b), F.R.Civ.P., which provides:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Specifically, the defendants maintain that the plaintiffs have failed to allege sufficiently the material misrepresentations or omissions, scienter, and reliance and causation.

It is clear that Rule 9(b) imposes more severe pleading requirements than are generally needed under Rule 8 which states that pleadings should contain a "short and plain" statement of the claim or defense and each averment should be "simple, concise and direct." Rule 9 does not render the general principles of Rule 8 inapplicable and, when necessary, "F.R.Civ.P. 9(b) must be reconciled with F.R.Civ.P. 8(a)(2)." *Denny v. Barber*, 576 F.2d 465, 467 (2d Cir.1978).

In assessing the complaint, it is necessary to keep in mind that Rule 9(b) serves several important purposes. First, it assures the defendant of "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Denny v. Barber*, *supra*, 576 F.2d at 469. Second, the requirement of specificity gives defendants some assurance that their reputations will not be damaged by unsubstantiated charges of fraudulent behavior. *Ross v. A.H. Robins Co.*, 607 F.2d 545, 557 (2d Cir.1979), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980). Finally, and of particular importance in the securities context, requiring specificity prevents strike suits filed solely for their settlement value. *Decker v. Massey–Ferguson*, 681 F.2d 111, 115 (2d Cir.1982).

The defendants first argue that the plaintiffs have not alleged specific facts to

---

**8.** Section 13.1–522(b) also differs from § 410(b) of the Uniform Securities Act on which it was based. Section 410(b) provides liability for "[e]very person who directly or indirectly controls a seller liable ..." It makes no mention of liability for those who "participate or aid."

**9.** Chapter 15 of Virginia's blue sky law, Va.Acts 1928, ch. 529, pp. 1392–93, provided in relevant part:

> the person making such sale or contract for sale, and every agent of or for such seller who shall have participated or aided in any way in making such sale, shall be jointly and severally liable to such purchaser ...

This was codified in 1930 as Va.Code Ann. § 3848(61) (1930).

**10.** 1956 Va.Acts 428, codified as Va.Code Ann. § 13.1–522(b) (1950) provided in relevant part:

> Every person who materially participates or aids in a sale made by any person liable under subsection (a), or who directly or indirectly controls any person so liable, shall also be liable jointly and severally with and to the same extent as the person so liable, unless the person who so participates, aids or controls sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.

support their claims of misrepresentation and omission. As a general rule, a plaintiff must "specify the time, place, speaker, and sometimes even the content of the alleged misrepresentations." *Luce v. Edelstein,* 802 F.2d 49, 54 (2d Cir.1986). The plaintiffs have specified the relevant time period, the stocks in question, and the content of the alleged misrepresentations. The plaintiffs have also clearly set out the information they are claiming the defendants knew but omitted to report. The plaintiffs' allegations meet the Rule 9 standard in that they give the defendants "fair notice of what [the plaintiffs'] claim is and the grounds upon which it rests." *Denny v. Barber, supra,* 576 F.2d at 469.

■ The defendants next argue that the plaintiffs fail to allege scienter sufficiently. However, the plaintiffs are not required to allege or prove scienter for a violation of § 13.1–522.[11] This section imposes liability on each person "who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known [of the false representation or omission]." It is unnecessary for a plaintiff to allege or prove scienter since the defendant is liable unless he can prove reasonable conduct resulting in actual lack of knowledge.

It is logically required that scienter not be an element of § 13.1–522 since the statutory "reasonable care" affirmative defense is inconsistent with the element of scienter. If scienter was an element of § 13.1–522, then the "reasonable care" affirmative defense included within that section would be pointless as well as violate basic legal principles. Such defense would be pointless because if a defendant proved lack of knowledge and reasonable care, then it would be impossible for the plaintiff to prove all the elements of the offense. In this situation it would be unnecessary for a defendant to have a statutory affirm-

ative defense. Furthermore, if scienter was an element of § 13.1–522, the "reasonable care" defense would be wrong as a matter of basic legal principle. Absent statutory directive, the burden is on a plaintiff to prove each element of an offense, not on a defendant to disprove it.

Other courts construing statutes similar to § 13.1–522 have reached the same conclusion. *American General Insurance v. Equitable General Corp.,* 493 F.Supp. 721 (E.D.Va.1980) (similar analysis regarding a Texas statute almost identical to § 13.1–522); Bromberg & Lowenfels, Securities Fraud & Commodities Fraud, § 8.4(210), pp. 204.1–204.2 (1988) (Uniform Securities Act upon which § 13.1–522 was based does not require scienter).

■ Finally, the defendants argue that the plaintiffs fail to allege reliance and causation. However, in non-disclosure cases it is not necessary to allege and prove reliance and causation. As the Supreme Court has held in a case alleging primarily non-disclosure,

proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision. (citations omitted). This obligation to disclose and this withholding of a material fact establish the requisite element of causation in fact. *Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972).

In the case at hand, the essence of the plaintiffs' complaint is that the defendants failed to disclose material facts to them. Therefore it is not necessary that the plaintiffs allege and prove reliance.

E.

■ The defendants argue pursuant to

11. In any event, the plaintiffs have met their scienter pleading requirement. As the defendants themselves acknowledge, the plaintiffs have made scienter allegations of recklessness, in the alternative, in paragraphs 18, 21, and 22 of their complaint. Recklessness satisfies the

scienter requirement, at least in cases such as this where the defendant owed the plaintiff a fiduciary duty. *Rolf v. Blyth, Eastman Dillon & Co., Inc.,* 570 F.2d 38, 44 (2d Cir.1978), *cert. denied,* 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978).

Rule 8(a)(3), F.R.Civ.P.,[12] that Dean Witter should not be a party to this action because the plaintiffs seek no relief from Dean Witter. The plaintiffs, on the other hand, argue that Dean Witter is an indispensable party within the meaning of Rule 19, F.R. Civ.P.[13] The plaintiffs claim against Sears is a derivative one based on its "control" of Dean Witter as a wholly-owned subsidiary. Although Sears' control of Dean Witter, as well as its knowledge of the alleged violation are questions that involve primarily Sears, the alleged underlying violation in this case involves Dean Witter. Most of the allegations in the complaint are directed at the activity of Dean Witter and liability exists for Sears only if the plaintiffs demonstrate that Dean Witter violated the Virginia Act. In sum, almost everything that is in controversy is so as a result of the actions of Dean Witter. In light of these facts, Dean Witter is clearly an indispensable party to this action.[14] *See Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553 (5th Cir.1985) ("[subsidiary] was more than an active participant ...it was the primary participant" and therefore should be joined) and cites therein.

### F.

The defendants have requested a stay of this proceeding pending the outcome of the court-ordered arbitration between the plaintiffs and Dean Witter. Whether to stay litigation involving non-arbitrating parties pending the outcome of an arbitration is a decision left to the district court as a matter of its discretion to control its docket. *Moses H. Cone Memorial*

*Hosp. v. Mercury Const.*, 460 U.S. 1, 20 n. 23, 103 S.Ct. 927, 939 n. 23, 74 L.Ed.2d 765 (1983). Although both this case and the arbitration center around the conduct of Dean Witter, they proceed under statutes which have different elements and therefore the outcome of one proceeding will not be dispositive of the other. Accordingly, "the concern for speedy resolution suggests that neither should be delayed" and therefore no stay will be granted. *Chang v. Lin*, 824 F.2d 219, 223 (2d Cir.1987) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985)).

### IV.

In conclusion, for the reasons stated above, the defendants' motion for dismissal of the complaint pursuant to Rule 12(b)(6), F.R.Civ.P.; for dismissal of the complaint as to Dean Witter; and for a stay of the proceedings pending arbitration are denied. The defendants are directed, pursuant to Rule 12(a), F.R.Civ.P., to answer the plaintiffs' complaint within 20 days after receiving this opinion.

IT IS SO ORDERED.

---

12. Rule 8(a)(3) provides in relevant part: "A pleading which sets forth a claim for relief ...shall contain a demand for judgment for the relief the pleader seeks."

13. Rule 19(a) provides in relevant part: "A person ... shall be joined as a party in the action ...if the person claims an interest relating to the subject of the action ..."

14. None of the cases cited by the defendants are persuasive. In such cases, the party seeking dismissal either had no significant involvement with the dispute being litigated or the plaintiff did not adequately state a claim against the defendant. In contrast, in the case at hand, Dean Witter is the primary actor in the dispute and the plaintiffs have adequately alleged Dean Witter's violation of Virginia law.