Craig **MECHAM** and John **Hedman,**
Plaintiffs and Appellants,

v.

Myron L. **BENSON** and Ellen **Benson,**
Defendants and Respondents.

No. 15649.

Supreme Court of Utah.

Jan. 2, 1979.

**7.** 66 Am.Jur.2d 945, Restitution and Implied Contracts, Sec. 3, Restatement of Restitution, Sec. 1 et seq.

Steven F. Alder, Salt Lake City, for plaintiffs and appellants.

Mark S. Miner, Salt Lake City, for defendants and respondents.

ELLETT, Chief Justice:

This is an action on a mobile home sales contract. Appellants Mecham and Hedman (hereinafter called "Sellers") sued for the unpaid balance of the purchase price after Respondents Bensons (hereinafter called "Buyers") defaulted and after Sellers had repossessed and sold the home in accordance with the seller remedies provisions of the Agreement and had applied the net proceeds from the sale against the contract debt. The Buyers counterclaimed charging fraud in the inducement. From a jury verdict of "no cause of action on Sellers' complaint" and an award to Buyers of the return of their down payment, plus attorney's fees, Sellers appeal.

We are obliged to view the evidence in the light most favorable to sustaining the jury verdict; and the evidence, although vigorously disputed, supports the following statement of facts: On October 29, 1975, Buyers signed an Assignment Sale and Security Agreement (hereinafter the "Agree-

ment") for the purchase of a mobile home from Sellers.[1] The Agreement was a form instrument supplied by a bank with a number of blanks to be filled in to cover the details of the sale. When the Buyers signed it, there were several blanks still to be completed including those relating to the finance charge, the annual rate of finance charge, the number of monthly installments to be paid, the amount of each installment, and the total which would have been paid at the conclusion of the Agreement. The Buyers trusted the Sellers to fill in the blanks in accordance with a verbal understanding that the annual rate of finance charge would be 8.5%.

As part of the negotiations leading up to the sale, the Sellers responded to Buyers' question about whether the home had ever been blown over by saying that it had *not,* to their knowledge. The center section of the home had, in fact, been blown over in a storm, and the toppled section had been reincorporated into the structure. The Agreement characterizes the home as "new," although both parties knew it had been shown to prospective buyers as an example of the model.

The buyers made a $7,400 down payment on the $27,000 purchase price and took possession of the home on or about the contract date. Shortly afterwards, they received from Walker Bank and Trust Company (to which Sellers had assigned the agreement with recourse) a payment book and a copy of the Agreement on which the finance charge information had not been filled in. The Buyers remained in possession of the home at least through June of 1976 and made monthly payments of $245.82 during that period. While in possession, they brought to Sellers' attention a number of defects in the home which were not all repaired to Buyers' satisfaction.

After having made seven of the monthly installment payments. Buyers consulted with bank personnel and became aware that the annual rate of finance charge was 13.6% and not 8.5% as they had believed. Buyers then stopped making payments. They did not, at that time or ever, give notice to Sellers that they rejected the home as defective nor did they undertake to exercise their rights under Sections 70A–2–711 et seq. of the Uniform Commercial Code. Moreover, upon learning that the annual rate and total amount of finance charge was in excess of their understanding or of any written disclosure to them, Buyers did not undertake to exercise their rights under Section 70B–5–203 of the Uniform Consumer Credit Code. Sellers repossessed and sold the home in accordance with the terms of the Agreement, with actual notice to Buyers; but Buyers still gave no notice of rejection that the home was less than represented nor did they give notice of rescission for fraud.

It cannot be determined from the record as to *when* Buyers vacated the home, but they clearly occupied it for eight months. At some time during that eight months they became aware, or at least suspicious, that the home had been wind-damaged before they purchased it.[2] The record does not reveal, however, they ever gave notice of intent to rescind the Agreement because they had been fraudulently induced to enter into it by Sellers' misrepresentation as to its previously undamaged state.

When Sellers sued on the Agreement, Buyers counterclaimed on a fraud theory and asserted no other kind of claim. Buyers pleaded fraud with the requisite specificity required under Rule 9(b), U.R.C.P. and prayed for general and punitive damages. In reply to the counterclaim, Sellers filed a general denial but did not assert any defense based on waiver, laches, or estoppel.

Traditionally, a person who has been fraudulently induced to enter into a con-

---

1. Sellers now maintain that the selling party under the Agreement was really Majestic Mobile Homes, Inc., a corporation, but the corporate entity was never mentioned in Sellers pleadings, and its role is not relevant to the disposition of the case as hereinafter discussed.

2. The record does not show when Buyers had knowledge of the wind damage, but that they heard rumors of it during their occupancy of the home.

tract has either of two remedies; he could rescind the transaction—tendering back what he has received and suing for what he has parted with; or, he may affirm the transaction and maintain an action in deceit. The Uniform Commercial Code makes damages available in an action for rescission,[3] but it does not otherwise change the traditional theory of election of remedies.[4]

In this case, Buyers' conduct is not consistent with affirmation of the transaction. They stopped making payments under the Agreement, and they permitted the home to be repossessed and sold without objection. Their conduct is only consistent with rescission. Rescission based on fraudulent inducement is, of course, an equitable remedy. There is obviously a time after which a buyer can no long assert an equitable right to rescind but will be barred by his laches, waiver or estoppel. A buyer may waive his right to rescind for fraud if he uses the property which was the subject of the sale after he discovered, or in the exercise of reasonable care should have discovered, the ground for rescission.[5] Sellers did not, however, raise any issues as to waiver, laches, or estoppel[6] in the trial of the case and do not raise those issues on appeal. On the basis of the instructions, none of which is challenged by Sellers in this appeal, the jury could, and did, as their verdict reflects, find that Buyers were fraudulently induced to enter into the contract, that they made timely rescission, and that (by permitting repossession) they tendered back what they had received under the contract. The return to Buyers of their down payment after justifiable rescission is consistent with long precedent.

Sellers attack the judgment on only two grounds. First, they claim that a corporation named Majestic Mobile Homes, Inc., was the actual seller of the home and that Sellers were only acting as officers and agents of that corporation. In none of their pleadings, however, did Sellers ever suggest that a corporate entity was involved. In fact, they affirmatively pleaded that they were, as individuals, the sellers identified in the Agreement; and the Agreement itself provides no contrary indication. Their responses to interrogatories deny any corporate interest in the litigation. They will not be permitted to insulate themselves from the consequences of their tortious conduct by injecting the corporation on appeal. Moreover, the only basis of recovery is fraud, and the false representations, if any there were, emanated from Appellant Mecham. He would not exculpate himself by proving that he was acting as agent of a corporation; he would only additionally inculpate his corporate principal.

The second basis on which Sellers attack the judgment is that the evidence clearly establishes the Buyers' failure to satisfy statutory procedural requirements for rejecting merchandise that falls short of the quality specified in a sales agreement. Consequently, Sellers argue, Buyers' recovery is barred as a matter of law.

Sellers' argument would be convincing if Buyers' counterclaim constituted the assertion of a statutory right to reject defective merchandise. Buyers' counterclaim does not, however, assert any right based on Sellers' failure to deliver the specified merchandise. It states in unmistakable language a claim of fraud in the inducement.

The circumstances of Buyers' misunderstanding of the finance charge call for special comment. The Uniform Consumer Credit Code provides the exclusive buyer remedies where there has been a seller's failure to disclose the details of the finance charge. We do not hold that such non-disclosure is a basis for rescission except within the limitation of Section 70B–5–204. The jury presumably found, however, that

---

**3.** 70A–2–721.

**4.** *Assoc. Hardware v. Big Wheel Dist. Co.,* 3 Cir., 355 F.2d 114, 17 A.L.R.3d 998 and following annotation; McCormick on Damages, Section 121.

**5.** See annotation at 41 A.L.R.2d 1173.

**6.** Rule 8(c), U.R.C.P. requires such defenses to be affirmatively pled.

the Sellers misrepresented the home to have been "new" (which includes the connotation of undamaged by use) and specifically misrepresented that the home was previously undamaged by wind. Such misrepresentation as to the stress history of merchandise being sold on inspection can constitute fraudulent inducement.

The attorney for the Sellers stipulated that the prevailing party could recover an attorney's fee in the amount found by the court. There is no basis in the record for an award of counsel fees and no basis for the stipulation. The contract of sale contained no provision for an award of counsel fees to the Buyers, and our law is well settled to the effect that in a law case, such as this, counsel fees can only be awarded where the contract so provides or where there is some statutory provision permitting it. A lawyer cannot stipulate for a judgment against his client unless where it is shown that he is authorized to do so, there is no basis therefor.

Other than the matter of attorney's fees, the ruling of the court is based upon competent evidence which sustains it. The case is, therefore, remanded, to the trial court with directions to exclude the award of attorney's fees therefrom. The judgment is otherwise affirmed. No costs are awarded.

CROCKETT, MAUGHAN, WILKINS and HALL, JJ., concur.