Gerhard W. GOHLER, IRA; John C. Sutherland; Barbara Catherwood; David W.J. Paden; Joseph M. Gaffney; Stevens D. Frink; and Jeff Nouwens, on behalf of themselves and all others similarly situated, Plaintiffs, Appellants, and Cross–Appellees,

v.

Robert L. WOOD; Raymond L. Hixson; Robert N. Pratt; L. Wynn Johnson; John T. Dunlop; Gerald C. Monson; Stephen D. Nadauld; Portland General Corporation; Portland General Holdings, Inc.; Richard G. Reiten; Richard

W. Dyer; C.D. Hobbs; Peter J. Brix; Ken L. Harrison; Calvert Knudson; Deloitte & Touche; Kidder, Peabody & Co.; Piper, Jaffray & Hopwood, Inc., and Hanifen, Imhoff Inc., Defendants, Appellees, and Cross–Appellants.

No. 940306.

Supreme Court of Utah.

July 5, 1996.

David K. Isom, Scott A. Call, Thomas R. Karrenberg, Salt Lake City, Edward F. Haber, Boston, Mass., Robert C. Schubert, San Francisco, Cal., Blake M. Harper, Theodore J. Pintar, San Diego, Cal., Justine Fischer, Portland, Or., and Steve W. Berman, Seattle, Wash., for plaintiffs.

Richard D. Burbidge, Stephen B. Mitchell, Salt Lake City, for defendants Wood, Hixson, Johnson, and Monson.

Douglas J. Parry, Salt Lake City, for defendant Dunlop.

William B. Bohling, Randon W. Wilson, Jeffrey N. Walker, Salt Lake City, for defendant Nadauld Michael M. Later, Clark Waddoups, Salt Lake City, and Bruce A. Rubin, Portland, Or., for defendants Portland General.

Daniel L. Berman, Samuel O. Gaufin, Salt Lake City, for defendants Reiten, Dyer, Brix, Hobbs, Harrison, and Knudson.

Gary F. Bendinger, Richard W. Casey, Jeffery S. Williams, Catherine Agnoli, Stephen R. Waldron, Salt Lake City, and Barbara A. Mentz, New York City, for defendant Deloitte & Touche.

Robert A. Peterson, Alan L. Sullivan, Kathryn A. Snedaker, Salt Lake City, for Kidder Peabody, Piper Jaffray, and Hanifen, Imhoff.

ZIMMERMAN, Chief Justice:

This case is before the court on certification from the United States District Court for the District of Utah pursuant to rule 41 of the Utah Rules of Appellate Procedure. The district court's certification order presents the following two issues of state law for our determination: (i) whether reliance upon an alleged untrue statement or misleading omission is an essential element of a private cause of action under sections 61–1–1(2) and –22 of the Utah Code, the antifraud provisions of the Utah Uniform Securities Act ("Utah Act"); and (ii) if reliance is an element, whether proving "fraud-on-the-market" satisfies that requirement.[1] We hold that these antifraud provisions do not require proof of reliance, and therefore, we need not decide whether such a requirement could be satisfied by proof of "fraud-on-the-market."

The relevant facts, which we have extracted from the district court's certification order, are as follows: Plaintiffs filed a class action complaint in federal district court against various defendants. Plaintiffs alleged that they had purchased common shares and convertible subordinated debentures in the now bankrupt Bonneville Pacific Corporation ("Bonneville"), that defendants intended to promote the myth that Bonneville was a company of sound financial condition by engaging in a series of sham transactions and issuing misleading press releases, financial records, and public-offering documents, and that defendants' misrepresentations violated sections 61–1–1(2) and –22 of the Utah Act.

Certain defendants moved to dismiss plaintiffs' claims under the Utah Act, arguing that plaintiffs had not pleaded that they actually relied on defendants' alleged misrepresentations. Although plaintiffs had not pleaded actual reliance, they had pleaded that defendants' actions constituted "fraud-on-the-market." The district court certified the following questions of first impression to this court: (i) whether reliance is an element of a private cause of action under sections 61–1–1(2) and –22, and (ii) if reliance is an element, whether proof of "fraud-on-the-market" can satisfy that requirement.

 The dispositive issue in this case, whether reliance is an element of a private cause of action under sections 61–1–1(2) and –22, presents a question of statutory construction. This court's primary objective in construing enactments is to give effect to the legislature's intent. *West Jordan v. Morrison*, 656 P.2d 445, 446 (Utah 1982). We look first to the plain language of the statute to discern the legislative intent. *Chris & Dick's Lumber & Hardware v. Tax Comm'n*, 791 P.2d 511, 514 (Utah 1990); *see also Schurtz v. BMW of N. Am., Inc.*, 814 P.2d 1108, 1112 (Utah 1991). "Thus, we will interpret a statute according to its plain lan-

---

1. "Succinctly put:
 The fraud on the market theory is based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business.... Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements."
 *Basic Inc. v. Levinson*, 485 U.S. 224, 241–42, 108 S.Ct. 978, 988–89, 99 L.Ed.2d 194 (1988) (alteration in original) (quoting *Peil v. Speiser*, 806 F.2d 1154, 1160–61 (3d Cir.1986)).

guage, unless such a reading is unreasonably confused, inoperable, or in blatant contravention of the express purpose of the statute." *Perrine v. Kennecott Mining Corp.*, 911 P.2d 1290, 1292 (Utah 1996). "Only when we find ambiguity in the statute's plain language need we seek guidance from the legislative history and relevant policy considerations." *World Peace Movement of Am. v. Newspaper Agency Corp.*, 879 P.2d 253, 259 (Utah 1994); *see also Schurtz*, 814 P.2d at 1112. Accordingly, our analysis of sections 61–1–1(2) and –22 begins with the plain language of those sections.

Section 61–1–1(2) makes it

unlawful for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly to:

. . .;

(2) make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading[.]

Utah Code Ann. § 61–1–1(2). Section 61–1–22(1) imposes civil liability upon those who violate section 61–1–1(2), while section 61–1–22(3) provides a defense to liability under certain circumstances. In relevant part, section 61–1–22 provides:

(1)(a) A person who . . . offers, sells, or purchases a security in violation of Subsection 61–1–1(2) is liable to the person selling the security to or buying the security from him, who may sue either at law or in equity to recover the consideration paid for the security. . . .

. . . .

(3) A person who offers or sells a security in violation of Subsection 61–1–1(2) is not liable under Subsection (1)(a) if the purchaser knew of the untruth or omission, or the seller did not know and in the exercise of reasonable care could not have known of the untrue statement or misleading omission.

Utah Code Ann. § 61–1–22(1), (3).[2]

■ The terms of these provisions contain no requirement that a plaintiff prove reliance to recover. As applied to the facts alleged in this case, the plain language requires that (i) defendants, in connection with the offer or sale of a security, either made an untrue statement of a material fact or omitted to state a material fact, Utah Code Ann. §§ 61–1–1(2), –22(1); (ii) plaintiffs did not know of the untruth or omission, Utah Code Ann. § 61–1–22(3); and (iii) defendants knew or in the exercise of reasonable care could have learned of the untruth or omission. *Id.* The second element is the only one which relates to a plaintiff's state of mind, and it requires only that the plaintiff did not know of the untruth or omission; the statute says nothing about reliance. The fact that the legislature plainly articulated a plaintiff's required state of mind but was silent as to whether the plaintiff must have relied on the untruth or omission to recover clearly indicates that the legislature did not intend to adopt a reliance requirement.

Defendants, however, ask us to look beyond the plain language of sections 61–1–1(2) and –22 and to read a reliance requirement into the Utah Act. They argue (i) that in *S & F Supply Co. v. Hunter*, 527 P.2d 217 (Utah 1974), this court interpreted the pre–

**2.** The version of section 61–1–22 quoted in the text reflects a clarifying amendment made in 1990. *See* Utah Uniform Securities Act Amendments, ch. 133, § 15, 1990 Utah Laws 456, 470. Prior to 1990, section 61–1–22 read in relevant part as follows:

(1) Any person who . . . offers, sells, or purchases a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, the buyer not knowing of the untruth or omission, and who does not sustain the burden of proof that he did not know, and in

the exercise of reasonable care could not have known, of the untruth or omission, is liable to the person selling the security to or buying the security from him, who may sue either at law or in equity to recover the consideration paid for the security. . . .

Utah Code Ann. § 61–1–22 (1989). The parties in the instant case agree that the 1990 amendment was intended to clarify, not to alter, their substantive rights under the earlier version of the statute. Because amendments which merely clarify existing law are applied retroactively, *State, Department of Social Servs. v. Higgs*, 656 P.2d 998, 1001 (Utah 1982), the current version of section 61–1–22 governs this dispute.

1990 version of section 61–1–22 as requiring purchaser reliance and the legislature manifested its intent to adopt *S & F Supply*'s interpretation when it amended section 61–1–22 in 1990 but left intact the portion of the statute upon which the *S & F Supply* court relied in inferring a reliance requirement; and alternatively (ii) that section 61–1–22's express private cause of action for violation of section 61–1–1(2) should be interpreted as including the same elements as the federal implied private cause of action for violation of section 10(b) of the Securities Exchange Act of 1934 ("1934 Act") and Securities and Exchange Commission ("SEC") rule 10b–5(b) promulgated thereunder. We reject both arguments.

Defendants first argue that the legislature should be presumed to have adopted *S & F Supply*'s interpretation of section 61–1–22 because the legislature amended that section in 1990 but did not alter its requirement that a purchaser did not know of the untruth or omission which, defendants contend, was the basis for *S & F Supply*'s imposition of a reliance requirement. *See American Coal Co. v. Sandstrom,* 689 P.2d 1, 3 (Utah 1984) ("Where the legislature amends a portion of a statute, leaving other portions unamended, ... absent substantial evidence to the contrary, the legislature is presumed to have been satisfied with prior judicial constructions of the unaltered portions of the statute and to have adopted those constructions as consistent with its own intent."). In making this argument, however, defendants mischaracterize this court's decision in *S & F Supply.* The court's ultimate conclusion in *S & F Supply* was that a buyer of securities could not recover under the pre–1990 version of section 61–1–22 unless the buyer exercised "reasonable care and prudence under the circumstances." *S & F Supply,* 527 P.2d at 222. In reaching this conclusion, the court reasoned:

> [T]he statute cannot fairly be understood as meaning that a buyer can naively or blindly purchase stocks without concern for the truth or reasonableness of representations made, then if it later develops

that it would serve his interest, assert a claim of falsity of a representation about which he previously had no concern, and upon which he placed no reliance, as a basis for avoiding his contract. This is fairly deducible from the ... clause in the statute [exempting sellers from liability if the purchaser knew of the untruth or omission].

*Id.* at 221.

Defendants characterize this passage as reading a reliance requirement into the earlier version of section 61–1–22. We disagree. While we acknowledge that the court's reference to purchaser reliance is somewhat confusing, we must read that reference in the larger context of its surrounding paragraphs. The paragraph from which this passage was taken provides the basis for the court's later conclusion that one who unreasonably purchases securities without regard for the truth cannot recover under section 61–1–22. In reaching this conclusion, the court mentioned reliance, apparently not to affirmatively establish a reliance requirement, but simply to illustrate that one who purchases stock without concern for the truth cannot logically be said to have relied upon an untruth or omission. Nothing in the remainder of the opinion suggests that the court intended to affirmatively adopt a reliance requirement.

Our interpretation of *S & F Supply* is supported by the court's recognition in that case that section 61–1–22's materiality requirement "seems to import some *objective* standard of reliance." *Id.* (emphasis added). The court explained that only misrepresentations which "a buyer or seller of ordinary intelligence and prudence would think to be of some importance in determining whether to buy or sell" may provide the basis for recovery under section 61–1–22. *Id.* In contrast, however, the court was silent as to whether a purchaser must have subjectively relied on such a misrepresentation to recover. We will not infer an intent to establish a reliance requirement from the court's silence on that issue.[3] Because we conclude that the

---

**3.** The dissent misunderstands *S & F Supply*'s reference to an "objective standard of reliance" in concluding that "[i]t would be illogical for the court to require a plaintiff to prove she *reasonably* relied on the defendant's misrepresentations without also requiring that she *actually* relied on

*S & F Supply* court did not establish a reliance requirement, we reject defendants' argument that the legislature tacitly adopted such a requirement when it amended section 61–1–22 but left intact the requirement that the purchaser did not know of the untruth or omission.

In the alternative, defendants argue that section 61–1–22 should be interpreted to include the judicially imposed reliance element of the federal implied private cause of action for violation of section 10(b) of the 1934 Act [4] and SEC rule 10b–5.[5] Defendants' argument appears to proceed as follows: Federal courts have created an implied private cause of action for violation of section 10(b) and rule 10b–5; reliance is an element of this implied cause of action; section 61–1–1(2) of the Utah Act was modeled after section 10(b) and rule 10b–5; and section 61–1–22 creates an express private cause of action for violation of section 61–1–1(2); therefore, section 61–1–22 should be interpreted to include the reliance element of the federal implied private cause of action. We find this argument unpersuasive.

Section 61–1–22 is fundamentally different from the federal private cause of action for violation of section 10(b) and rule 10b–5. The federal cause of action is implied. *See Basic Inc. v. Levinson*, 485 U.S. 224, 230–31, 108 S.Ct. 978, 982–83, 99 L.Ed.2d 194 (1988). Because the federal cause of action is im-

plied, federal courts have had to define its elements and have derived these elements, at least in part, from the common law of fraud. *Id.* at 231, 108 S.Ct. at 983. One of these judicially crafted elements, also an element of common law fraud, requires the defrauded party to prove that it relied upon the alleged misrepresentation. *Id.* at 243, 108 S.Ct. at 989–90. In contrast, a cause of action under the Utah Act's antifraud provisions has express elements. Consequently, this court has no need to define these elements. Indeed, it would be inappropriate to do so when the legislature has already done so.

Even if we were to expand upon the express elements contained in sections 61–1–1(2) and –22, we see no reason to establish a reliance requirement. In *Basic Inc.*, the United States Supreme Court noted, "Reliance provides the requisite causal connection between a defendant's misrepresentation and a plaintiff's injury." *Id.* However, the Court also recognized, "There is ... more than one way to demonstrate the causal connection." *Id.* Section 61–1–22 embraces one such alternative by providing a remedy only to plaintiffs who are in privity with the defendant. *See* Utah Code Ann. § 61–1–22(1)(a) ("A person who ... offers, sells, or purchases a security in violation of Subsection 61–1–1(2) is liable to the person selling the security to or buying the security from him...."). Privity, which is not an element of the feder-

such misrepresentations." The "objective standard of reliance" referred to in *S & F Supply* arises out of section 61–1–22's materiality requirement and requires only that the misrepresentations at issue be of sufficient importance that a buyer or seller could reasonably rely on them in making the decision to buy or sell. In other words, the materiality requirement requires proof that a hypothetical "reasonable person" would have relied on the misrepresentations, not that any particular plaintiff actually relied on them.

4. Section 10(b) provides:

 It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
 ....
 (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security

not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.
 15 U.S.C. § 78j.

5. Rule 10b–5 provides:

 It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
 ....,
 (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, ...
 in connection with the purchase or sale of any security.
 17 C.F.R. § 240.10b–5.

al implied private cause of action, establishes the necessary link between the alleged misrepresentation and the plaintiff's injury and therefore serves the same purpose as the reliance requirement of common law fraud and the federal implied cause of action.[6] Accordingly, we refuse to read a reliance requirement into sections 61-1-1(2) and -22.

Finally, we note that our reading of these sections comports with the legislature's suggestion that the Utah Act "may be so construed as to effectuate its general purpose to make uniform the law of those states which enact it and to coordinate the interpretation and administration of this chapter with the related federal regulation." Utah Code Ann. § 61-1-27. First, our decision is in accord with a significant majority of other courts' interpretations of statutes which, like section 61-1-22, were modeled after section 410(a)(2) of the Uniform Securities Act or section 605(a) of the Uniform Revised Securities Act. *See, e.g., Arnold v. Dirrim,* 398 N.E.2d 426, 435 (Ind.Ct.App.1979); *Everts v. Holtmann,* 64 Or.App. 145, 667 P.2d 1028, 1033, *review denied,* 296 Or. 120, 672 P.2d 1193 (1983); *Bradley v. Hullander,* 272 S.C. 6, 249 S.E.2d 486, 495 (1978) (per curiam); *Esser Dist. Co. v. Steidl,* 149 Wis.2d 64, 437 N.W.2d 884, 886-87 (1989); *see also MidAmerica Fed. Sav. & Loan Ass'n v. Shearson/American Express Inc.,* 886 F.2d 1249, 1254-57 (10th Cir.1989) (interpreting Oklahoma Securities Act); *Carothers v. Rice,* 633 F.2d 7, 14-15 (6th Cir.1980) (interpreting Kentucky Securities Act), *cert. denied,* 450 U.S. 998, 101 S.Ct.

1702, 68 L.Ed.2d 199 (1981); *Forrestal Village, Inc. v. Graham,* 551 F.2d 411, 414 (D.C.Cir.1977) (per curiam) (interpreting District of Columbia Securities Act); *Adams v. Hyannis Harborview, Inc.,* 838 F.Supp. 676, 688 (D.Mass.1993) (interpreting Massachusetts Securities Act), *aff'd sub nom. Adams v. Zimmerman,* 73 F.3d 1164 (1st Cir.1996); *Comeau v. Rupp,* 810 F.Supp. 1127, 1158-59 (D.Kan.1992) (interpreting Kansas Securities Act). Second, our decision is consistent with federal courts' refusal to hold that section 12(2) of the Securities Act of 1933, the federal analog to section 61-1-22, contains a reliance requirement.[7] *See, e.g., Woodward v. Wright,* 266 F.2d 108, 116 (10th Cir.1959); *see also Gustafson v. Alloyd Co.,* — U.S. —, —, 115 S.Ct. 1061, 1070, 131 L.Ed.2d 1 (1995) (recognizing "Congress' decision in § 12(2) to grant buyers a right to rescind without proof of reliance"); Louis Loss, *Fundamentals of Securities Regulation* 889 (1988) (noting that reliance is not element of section 12(2) cause of action).

For the foregoing reasons, we hold that reliance is not an element of a private cause of action under sections 61-1-1(2) and -22.

IWASAKI and MEDLEY, JJ., concur in Chief Justice ZIMMERMAN's opinion.

RUSSON, Justice, dissenting:

I respectfully dissent. The majority opinion mistakenly concludes that *S & F Supply Co. v. Hunter,* 527 P.2d 217 (Utah 1974), does

---

**6.** The dissent rejects this argument, noting that subsection 61-1-22(4)(a) imposes liability upon certain individuals with whom the plaintiff was not in privity. That subsection, however, simply incorporates well-established principles of agency law. *See, e.g., Mecham v. Benson,* 590 P.2d 304, 308 (Utah 1979) (noting that both agent and principal would be liable for agent's misrepresentations); *see also* Restatement (Second) of Agency § 145 (1958) (imposing liability on principal for misrepresentations of agent). It does not, as the dissent appears to contend, expand liability beyond those with whom the plaintiff was in privity, including certain agents and principals who knew or should have known "of the existence of the facts by reason of which the liability is alleged to exist." Utah Code Ann. § 61-1-22(4)(a).

**7.** Section 12(2) provides in pertinent part:
Any person who—

..., []
(2) offers or sells a security ... by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission,
shall be liable to the person purchasing such security from him, who may sue either at law or in equity....
15 U.S.C. § 77l(2).

not require reliance. To the contrary, a plaintiff who brings a cause of action under the Utah Act must establish that she *actually* and *reasonably* relied on the defendant's misrepresentations.

In *S & F Supply*, we rejected the argument, now proffered by the majority, that because the plain language of the Utah Act does not contain a reliance requirement, this court should not impose one:

> [I]t has also been said that this statute does not require the buyer to prove the element of his own *reliance* on the false representation. It is true that the statute does not expressly so state. *But* all of the law cannot be written in one sentence or one statute. This, and any other statute, must be considered in its relationship to the total fabric of the law and be so interpreted and applied as to be consistent with common sense, and with elemental principles of justice.

*Id.* at 221 (footnote omitted) (emphasis added). The court then went on to hold that the Utah Act does require reliance:

> *It follows* that the statute cannot fairly be understood as meaning that a buyer can naively or blindly purchase stocks *without concern for the truth or reasonableness of representations made,* then if it later develops that it would serve his interest, assert a claim of falsity of a representation about which he previously had no concern, and upon which he placed no *reliance,* as a basis for avoiding his contract.

*Id.* (emphasis added). The court continued, "This is fairly deducible from the parenthetical clause in the statute quoted above (the buyer not knowing of the untruth or omission)." *Id.* In 1990, the Utah legislature amended the statute interpreted by the *S & F Supply* court and, in doing so, retained the requirement that the buyer not know of the untruth or omission to recover—language cited by the *S & F Supply* court to support the imposition of a reliance requirement. Therefore, the legislature endorsed the *S & F Supply* court's interpretation of this language. *See American Coal Co. v. Sandstrom,* 689 P.2d 1, 3 (Utah 1984) ("Where the legislature amends a portion of a statute, leaving other portions unamended ... absent substantial evidence to the contrary, the legislature is presumed to have been satisfied with prior judicial constructions of the unaltered portions of the statute and to have adopted those constructions as consistent with its own intent."). Thus, this passage affirmatively establishes a reliance requirement, and the subsequent legislative changes did not preclude this requirement.

In addition, as acknowledged by the majority, the *S & F Supply* court held that the Utah Act contains an "objective standard of reliance" in connection with the materiality requirement of former section 61–1–22. *Id.* The materiality element of former section 61–1–22 is now found in section 61–1–1(2). Pursuant to section 61–1–1(2), it is unlawful for any person to "make any untrue statement of a *material* fact or to omit to state a *material* fact necessary in order to make the statements made ... not misleading...." (Emphasis added.) We stated in *S & F Supply*:

> [This language] seems to import some objective standard of reliance, because the determination of whether a fact is "material" can only be made in the frame of reference of the definition of what a material fact is: that is, *it must be something which a buyer or seller of ordinary intelligence and prudence would think to be of some importance in determining whether to buy or sell.*

*S & F Supply,* 527 P.2d at 221 (footnote omitted) (emphasis added). It would be illogical for the court to require a plaintiff to prove she *reasonably* relied on the defendant's misrepresentations without also requiring that she *actually* relied on such misrepresentations. Thus, I depart from the majority's conclusion that *S & F Supply* does not import a reliance requirement under the Utah Act. Accordingly, to bring a cause of action under the Utah Act, a plaintiff must establish that (1) she *actually* relied on the alleged misrepresentations, and (2) the misrepresentations were of the kind upon which a person "of ordinary intelligence and prudence" *would* rely in deciding to buy or sell securities. *Accord Geisenberger v. John Hancock Distribs., Inc.,* 774 F.Supp. 1045, 1050–51 (S.D.Miss.1991); *Foster v. Alex,* 213

Ill.App.3d 1001, 157 Ill.Dec. 778, 572 N.E.2d 1242, 1245 (1991).

Finally, although the majority opinion implicitly acknowledges the need for a causal connection between the plaintiff's injury and the defendant's misrepresentations, it mistakenly concludes that the privity requirement under section 61–1–22(1)(a) satisfies the need for a causal connection. However, this argument ignores the fact that a plaintiff may also bring a cause of action against a defendant with whom there was *no privity*. Section 61–1–22(4)(a) provides:

> Every person who *directly or indirectly controls a seller or buyer liable under Subsection (1)*, every partner, officer, or director of such a seller or buyer, every person occupying a similar status or performing similar functions, every employee of such a seller or buyer who materially aids in the sale or purchase, and every broker-dealer or agent who materially aids in the sale *are also liable* jointly and severally with and to the same extent as the seller or purchaser, unless the nonseller or nonpurchaser who is so liable sustains the burden of proof that he did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.

(Emphasis added.) Thus, the privity requirement of section 61–1–22(1)(a) alone does not satisfy the need for a causal connection between the plaintiff's injury and the defendant's misrepresentations.

Not only is the need for a causal connection satisfied by the reliance requirement, but additionally, the Utah Act explicitly requires that the alleged misrepresentations be made "in connection with" the offer, sale or purchase of a security. Utah Code Ann. § 61–1–1. As acknowledged by the Utah Court of Appeals, federal courts have broadly interpreted the "in connection with" requirement, "determining that it encompasses any sale of a security where fraud 'touches' the transaction." *State v. Harry*, 873 P.2d 1149, 1156 (Utah Ct.App.1994). Thus, an essential element of a cause of action under the Utah Act is that a plaintiff establish that the alleged misrepresentations "touched" or were involved in the offer, sale, or purchase of a security.

On the basis of the plain language of sections 61–1–1 and 61–1–22 and Utah case law interpreting these statutes, one can conclude only that a plaintiff who brings a cause of action under the Utah Act must establish (1) that the alleged misrepresentations were made *in connection with* the offer, sale, or purchase of securities, and (2) that she *actually* and *reasonably* relied on such misrepresentations.

HOWE, J., concurs in Justice RUSSON's dissenting opinion.

Having disqualified themselves, STEWART, Associate C.J., and DURHAM, J., do not participate herein; GLENN K. IWASAKI and TYRONE MEDLEY, District Judges, sat.