## Richmond

### BENTON H. POLLOK v. COMMONWEALTH OF VIRGINIA.

November 24, 1976.

Record No. 760679.

Present, All the Justices.

*Russell Nash Brahm, III (James D. Hundley; Hundley, Taylor & Glass,* on brief), for appellant.

*Joel H. Peck,* for State Corporation Commission.

Per Curiam.

Benton H. Pollok appeals as of right from an order of the State Corporation Commission adjudging him in violation of Virginia's Securities Act (§§ 13.1-501 *et seq.*) in connection with the sale of stock of Astro Tree and Lawn Service, Inc. Specifically, the Commission found not only that Pollok had sold stock which was unregistered, in violation of § 13.1-507, but also that he had sold the securities without registering as an agent, in violation of § 13.1-504(a). The Commission imposed upon Pollok a penalty of $1,000 and enjoined him from further violations of the Act.

In brief, the Securities Act prohibits both sales of unregistered securities and sales by unregistered agents. The Act, however, contains numerous exemptions from its registration

requirements. Relevant to the present case, § 13.1-514(b) exempts both security and agent registration in:

> "(8) Any sale of its securities by an issuer if, after the sale, it has not more than thirty security holders . . . ."

Astro was incorporated in May, 1972. Because it then had fewer than thirty shareholders, it was not required to register its securities with the Commission. Later needing more capital, it sought additional investors.

Pollok was Astro's secretary and corporate counsel. Although not registered as an agent under the Act, he recruited a number of investors and sold them stock. In an attempt to keep the number of Astro's security holders below thirty, and thus to retain its exempt registration status, Pollok took legal title as trustee to the securities of sixteen purchasers. Sixteen separate, revocable trust agreements were executed, some by Pollok alone, each declaring that Pollok held in trust the stock certificate of the respective purchaser.

If the sixteen purchasers named in the trust agreements are counted individually and their total is added to the number of investors themselves holding legal title to stock, Astro had in excess of thirty security holders, or more than the maximum permitted by the exemption contained in § 13.1-514(b)(8). The Commission determined that the sixteen purchasers should be counted individually; it concluded, therefore, that Astro's securities and Pollok's activities as agent were not exempt from registration. Pollok contends this was error; he asserts that he held the purchasers' shares as a unit and, consequently, he was a single security holder within the meaning of the exemption statute.

Thus, the issue is clearly drawn: When one as trustee holds an issuer's securities in trust for several different purchasers of stock, is he a single security holder under § 13.1-514(b)(8)?

To support his position, Pollok relies upon the failure of the Act to define the term "security holder." Because of this failure, he says we should define "security holder" and "person" synonymously. As he correctly points out, the term "person" is broadly defined in the Act to include not only an individual but also "a trust in which the interests of the beneficiaries are evidenced by securities" (§ 13.1-501(g)). By equating "security

holder" with "person," Pollok concludes that in his capacity as trustee he should be considered a single security holder.

While we agree with Pollok that the term "person" is broadly defined in the Act, we do not agree with his conclusion. An examination of the Act reveals that the term "person" is employed in those sections which either prohibit certain activities or require registration with the Commission. On the other hand, the term "security holder" is employed in the exemption section. Unquestionably, the General Assembly intended the two terms to have different meanings and designed them to serve varying purposes.

■ Like the federal Securities Act of 1933 (15 U.S.C. §§ 77a *et seq.* (1970)) and the Securities Exchange Act of 1934 (15 U.S.C. §§ 78a *et seq.* (1970)), Virginia's Securities Act is intended to protect investors from fraudulent sales of securities. Riely, *The Virginia Securities Act: A Blue Sky Primer*, 45 Va. L. Rev. 303, 308 (1959). Both the Virginia Act and the federal Acts achieve their ends in similar ways: the disclosure of material information concerning issuers of stock and the regulation of sellers of securities.

While we have not interpreted the present provisions of our Act, the federal courts have construed broadly the disclosure and regulation requirements of the federal Acts. As a corollary, they read narrowly the exemption provisions. *SEC* v. *M. A. Lundy Associates*, 362 F. Supp. 226, 231 (D.R.I. 1973). We believe Virginia's Act should receive similar construction.

The federal exemption for nonpublic issues (15 U.S.C. § 77d(2) (1970)), the equivalent of the 30-or-less exemption of the Virginia Act, permits groups of well-informed investors to buy securities without the protection of the disclosure requirements. *See SEC* v. *Ralston Purina Co.*, 346 U.S. 119, 125 (1953). Similarly, as the Commission has explained,* the Virginia exemption is designed "to permit small groups of friends and acquaintances ... to engage in business together without being burdened with the registration requirements."

To adopt Pollok's broad interpretation of the Virginia exemption, however, would completely thwart the purposes of the Act. Employing the trust device adopted by Pollok, any issuer of securities could procure capital, as did Astro, from a

---

* See Virginia Securities Release No. 1 (1967), 3 CCH Blue Sky L. Rep., ¶ 49, 611.

diverse group of investors yet escape disclosing material information necessary to prevent fraud and avoid registering its agents. To safeguard the purposes of the Act, we must look to the substance, not the form, of the device employed in Pollok's admitted attempt to circumvent the registration requirements. *See Tcherepnin* v. *Knight,* 389 U.S. 332, 336 (1967).

While the device employed in this case is labeled "Declaration of a Trust in Personal Property," it falls within the definition of "security," contained in Virginia's Securities Act. The term "security" is there defined to mean "stock . . . transferable share . . . or, in general . . . any certificate of interest or participation in . . . any of the foregoing" (§ 13.1-501(j)). We believe the declarations of trust involved in this case, to all intents and purposes, were certificates of interest or participation in stock or transferable shares.

The word "holder" requires no definition. Thus, each of the sixteen purchasers of Astro stock named in the trust agreements was a security holder within the meaning of § 13.1-514(b)(8). The Commission, therefore, correctly counted the sixteen purchasers individually, accurately ascertained that Astro had more than thirty security holders, and properly ruled that Astro's stock sale and Pollok's activities as agent were not exempt from the registration requirements of the Act.

For the reasons assigned, the order of the Commission will be affirmed.

*Affirmed.*